May it please the Court, in the case of Mr. Vargem, a valid emergency protective order was critical to issuance of the search warrant that was at issue in this case. The emergency protective order was the only thing that made Mr. Vargem's possession of guns illegal, and if Officer Toole, in writing out his affidavit for the search warrant, didn't establish in his affidavit that the emergency protective order had been validly served, then under the four corners of the search warrant, the search was invalid because probable cause could not be established. Every one of the fundamental errors in this case tie back to the due process issues related to the improper service related to the emergency protective order, because the emergency protective order that was not properly served on Mr. Vargem, because it was not properly served on Mr. Vargem, it was, in fact, void. He had been, according to the application for the warrant, he had been informed and acknowledged the existence of the warrant, including the provision that required him to turn in the guns. And in the application itself, it specifically mentioned that the officer had confirmed that Mr. Vargem was aware of the emergency protective order. However, the officer did not indicate in the application itself that he had informed him of all the other terms that would have been necessary for him to establish proper oral service. Additionally, the application for the search warrant didn't inform the magistrate judge issuing the search warrant that he had, in fact, been served. There is no indication in the application for the search warrant that Mr. Vargem had received proper service, because there was. The answer to my question is, the application states that Mr. Vargem had been advised and acknowledged that he was new or that there was a warrant, and that a provision of it was that he was to surrender his guns. That would be an incorrect statement, though, of what the requirements were for the emergency protective order. It is true that in the application, the officer indicated that he informed Mr. Vargem of essentially the existence of the emergency protective order. He confirmed with Mr. Vargem that he knew of it. And then he stated in the application that Mr. Vargem was ordered to surrender his weapons as a result of that. That is actually an incorrect statement of what the emergency protective order required. I thought under California law, there was a requirement that he, in fact, relinquish firearms in a domestic assault situation. So what is the difference between relinquish? I mean, this goes to your question about whether Frank's applies. Whether the officer intentionally or misrepresented the facts or was in reckless disregard of the facts. But essentially, it does not, California law, say that you have to relinquish firearms when you're faced with a domestic assault situation. And what is the difference between relinquish and surrender? The actual emergency protective order itself says that a person cannot possess own purchase firearms. In stating surrendering, it is something that is different from not possessing or owning a firearm. Mr. Vargem could have transferred his ownership of the weapon to someone. He could have sold the weapons he owed to someone else. That's fine, but California law says that in domestic relations situations, you have to relinquish firearms. It uses that actual term, relinquish firearms. And if you're looking at what the officer is thinking, essentially to determine whether, in fact, he's misrepresenting the facts, doesn't the officer necessarily have to follow California law in that circumstance? Which means he can say relinquish firearms. I think there is a specific difference, though, in what he is stating that he informed Mr. Vargem of in the application, though. It is one thing to say that he informed Mr. Vargem that he had to surrender the firearms. It's another thing to inform Mr. Vargem that he was no longer allowed to own or to possess a firearm. In order to establish the needed service, in order to show to the judge issuing the search warrant, he would have needed to show to that judge that he informed Mr. Vargem of the terms of the search warrant. And by mentioning he merely informed Mr. Vargem that he had to surrender the weapons, that is not complete service. That's not him informing Mr. Vargem of all the necessary terms of the search warrant. Why does compliance with California law make any difference in terms of a Fourth Amendment analysis under federal law? Because in this instance, the search warrant was the initiating starting point for all of the subsequent issues that occurred. I'm sorry, you would agree with me that any technical problems, but the service of the protective order have to fall in terms of a federal analysis. In other words, they're not relevant. Well, I believe in this case, because we're looking at what was gained from the search warrant that came from California search, the California-issued search warrant, we have to start there and say if it falls under California law, then it should also similarly fall under federal law. I think that our case law is different on that. We have to evaluate whether there's probable cause under federal law, regardless of the State law requirements. It cuts both ways. Obviously, in this case, it may cut against you. In other cases, it might cut for you. But leaving that issue aside, why wouldn't a good-faith exception under Leon apply here? Well, we're the argument here is that the officer tool in writing out the statement for the affidavit made a material misstatement. He made a misstatement of the law and the fact in that he stated that the requirement was that Mr. Varghum had to surrender the weapons that were seized. That's not a requirement under the law. Because of that, he misstated what the applicable law was. And additionally, he stated that Mr. Varghum was subject to surrender the law because of another California provision. Both of those were not applicable to Mr. Varghum as far as whether or not it would have been valid for a search warrant issue. Because of those actions that occurred, there is no good-faith exception to this application. In continuing on, we would argue that because there was no probable cause for the search warrant issue, the subsequent search was invalid and all the weapons that were seized as a result of that search should be suppressed. Continuing to our next issue, the significant procedural errors at sentencing. If the guidelines are important, and they are important, and it's the first thing that a court should turn to in determining whether or not a sentence is valid, then it's important that they be done correctly. And in this case, the district court improperly looked to the sentencing guidelines to try and determine what the proper sentence should be for Mr. Varghum. In the first instance, the two-level enhancement, which the government has conceded was improper in this case. Under de novo review shows that Mr. Varghum was subject to an additional time imposed to him because he should not have received the additional two-level enhancement that was given to him because he was not a prohibited person under the guidelines. Additionally, he should not have received the additional six-level enhancement for the number of weapons that were seized. Because under a mod, we can look to show that the weapons that were seized in addition to the machine gun that was seized, they weren't relevant to any kind of unlawful conduct. Mr. Varghum was a weapons collector. He was a person who lawfully was permitted to have a number of weapons in his home. And by having those additional weapons that were seized and counted against him, those weren't unlawful weapons that were. What kind of weapons collector was he? He was a handgun collector. He had a number of handguns in his home. The record indicates that the handguns that were seized were handguns, some of which were still in their original packaging, some of which had never been opened. He had a number of weapons that were stored in gun safes. The only illegal weapon under Federal law was the machine gun. That's correct. I'm understand. Who was the district judge? The district judge in this case was, one moment, Your Honor. I was just wondering whether he was still active or whether he was still on the bench. I believe so. You've got a fairly lenient sentence considering what you could have gotten under the guidelines. Well, I believe that the district judge took into consideration the pertinent 3553A factors applicable to Mr. Varghum in determining what the sentence would be. However, it is something where the district judge could have, and in fact, given Mr. Varghum an even lower sentence had he been aware that the guidelines that he thought would apply to Mr. Varghum would have started at 70 to 87 months, in fact, started at a much lower level. Had both of the enhancements not applied, Mr. Varghum's sentencing guidelines would have started at 30 to 37 months, and the requested sentence of 21 months would have been something that was much more reasonable to the district judge at that time. Well, how would you distinguish the Yip case? I mean, when you refer to the Enlad, that's the Second Circuit. Yes. I mean, that's my circuit. Yes. Right. But that doesn't apply in the Ninth Circuit. You should ask for a transfer. So we'd like to follow up the application of those six levels. But first, how do you distinguish the Yip case? I think one of the things that's distinguishable in the Yip case is the Yip case was talking about a financial crime. It was related to funds. And I think that the difference here between Ahmaud and Yip and some of these other cases is Ahmaud speaks specifically to 2K2.1 and specifically to weapons possession. And so when you're looking at guns and weapons, you can look to that and say that unlawful weapon possession is separate and distinct from all of these other types of offenses where tax fraud and things like that would be illegal no matter what jurisdiction it occurred in. Well, so, I mean, the cases talk about the distinction between Federal and State offenses. Yes. But that's not the correct analysis. And when I was reading your argument in regard to the sixth level increase, I noticed that you really didn't refer to relevant conduct. The difference between the Yip case, at least it seems to me, is that it's all part of a common scheme or plan, which is relevant conduct. So then you go to the instant offense, you determine what is relevant conduct, and Yip, it seems to me, that all of the loss amounts, whether Federal, State, et cetera, are relevant conduct. In this particular offense, the gravamen of the crime is possession of a machine gun. And to what extent is the possession of all of these other firearms, which are totally innocent unto themselves, a part of that general scheme? So it's really an analysis of 1B1.3 in whether you apply relevant conduct to those particular guns. And you didn't really raise that in your brief, and so I'd ask that you address that. I believe that the Court is correct, that it is not relevant. The other guns that were found are not relevant, aside from the fact that they were discovered at the same time in the same place as the machine gun. I don't believe that it would be properly considered relevant conduct under 1B1.3, because merely because the possession of the guns were illegal, possibly illegal under State law, does not make them illegal under Federal law. And because of that, they cannot be grouped in for consideration. But the distinction between Federal and State is irrelevant. The question is, you look to the crime itself, you figure out whether in relationship to this particular crime, the other possession of the other firearms is relevant. That's what relevant conduct is. And if it's not relevant to the same common scheme or plan of the initial crime, then it is not to be considered in the guideline application issues. And we would agree. Indeed. Yes, we would agree. And just to sum up, we would also argue that what is the answer? Is it relevant to the crime? It would not be relevant to the charged offense. The charged offense here is the possession of the firearm, the illegal possession of the machine gun. The possession of the other weapons are not relevant to that offense. It may be relevant to the assault in the State context, but the question is whether it's relevant to the machine gun or the possession of the unregistered firearm for which he was always also convicted. And I believe that that would not be the case. And to sum up, we would just argue that the fine that was imposed similarly on Mr. Vargam was imposed without proper consideration of all the factors that were presented before the district court. The district court relied solely on what was in the pre-sentence report, and Mr. Vargam presented additional information at sentencing that would have been relevant and should have been considered by the district court at the time of sentencing for the imposition of the fine. With that, I'll reserve my final 30 seconds. May it please the Court. Good morning, Your Honors. Owen Mardekin for the United States. The magistrate judge did not commit clear error in finding probable cause to issue the search warrant in this case based on the following facts set forth in the affidavit. The domestic violence incident followed by a description of the protective order that was issued against the defendant, the verbal verification with the defendant of the existence of that protective order, as well as the defendant's discussion of details of the protective order, particularly relating to his ability to sell or transfer the firearms. Can I ask you a factual question that I could not clarify? Yes, Your Honor. The telephone call happened on the 24th of June. It did, Your Honor. On the 22nd of June, apparently he was arrested. Is that right? He self-surrendered and was arrested. Okay. So he's arrested, and then he's released on bail. Yes. And isn't the standard practice that when you're released on bail, you're released subject to conditions? And wouldn't those conditions automatically involve handing him what the terms of the restraining order would be? Is that the way it works? Well, it should. And, in fact, he was the record shows that he was served with the restraining order on the 22nd. So at that time, he would have received the restraining order with all the details in it about restrictions on owning firearms. So that resolves the question as to whether he was, in fact, served with the restraining order? It resolves the question outside the four corners of this affidavit, Your Honor. It's clear, and we don't dispute, that within the four corners of the affidavit, the word service does not appear. Certainly that detail is not in this affidavit. The record, however, does include evidence of actual service on the 22nd of June to this defendant with a protective order, which is also in the record and includes all that information. But in evaluating probable cause, whether there was a substantial basis for the issuance of this search warrant, clearly the search warrant affidavit contains facts from which the magistrate could have inferred that there was a valid protective order in this case, which is all that should be necessary. Also ---- Is that necessary, or would it be sufficient if the officer had told him, and he acknowledged that he knew there was such an order, and that it required him to dispossess himself, let's say, of the firearms? I think it should be enough, Your Honor. I think that if there is evidence of the existence of that protective order ---- And that he was aware of it. And there is discussion of that he was aware of it, I think the magistrate doesn't have to assume away every possible defense. The magistrate can assume, presume, based on that evidence, that there is a valid protective order out there. Certainly the ---- this Court's precedent doesn't require an officer to list out every single detail and disavow any possible defense about, for example, service in this case in the four corners of the affidavit. So while the affidavit doesn't include the magic word service, the magic words aren't necessary for the probable cause finding here. And, of course, it's not a bare-bones affidavit either within the meaning of Leon and this Court's previous decisions, Underwood, for example. The bare-bones affidavit is typically where the only glue holding the affidavit together is the officer saying, trust me, there's probable cause, or trust me, I know this man is a criminal. That's not the way this affidavit is constructed. It's filled with facts, perhaps not every detail, but sufficient facts from which probable cause can be drawn. Also with respect to the Franks allegation, there really wasn't a substantial showing of intentional or reckless misconduct here to the degree necessary to have a Franks hearing or so that one should have been held. It's clear that this officer told Mr. Vargam that he had to surrender his firearms. Mr. Vargam responded, well, I sold or transferred them, which shows that he understood that. I don't think he said that he sold or transferred them. I thought he refused to answer and said, I'll call back. Well, actually, before that, Your Honor, he did say, and this is on page 233 in the affidavit, the officer says that he advised and verified with Vargam that he had the restraining order against him and that he had to surrender firearms. And then Vargam stated that all of his firearms were either sold or transferred. And then it's after that that the officer suggests that he get the combination of his safes, and Mr. Vargam responds that he'd rather call his attorney. So I think Mr. Vargam's response shows that he understood that selling or transferring the weapons was an option, which he would have known, of course, had he been served, which the record shows that he was. If the Court would like, I'd like to discuss sentencing. There was an error in sentencing here, an error of two offense levels and a calculation of the base offense level of sentencing. But while this Court, in many cases, finds significant procedural error in that kind of a mistake, there are exceptions. This Court has stated in Muniz-Camarena that it's not every case where this Court will remand for resentencing because there has been an error in calculation of the guidelines. And I think this case should be one of those exceptions for a number of reasons. First of all, the defendant made a specific request for an offense level at sentencing in this case. Page 132, I believe, page 132 is the sentencing memorandum that the defendant submitted. He says specifically, I would like to be sentenced at offense level 16, criminal history category 1. And the Court, in fact, sentenced him at offense level 16. He sentenced him at criminal history category 2, but that was not an error. And I think that the defendant acknowledged that because he was asking for a departure in both the criminal history category as well as the offense level. So the Court sentenced him at specifically the offense level that he requested at sentencing. Second of all, the sentencing memorandum and the defendant's remarks at sentencing show that he believed that that offense level 16 took into account all of the 3553A factors. And the defendant said on page 20, this is of the excerpts of record, that the requested sentence fulfills all of the statutory purposes in obvious reference to 3553A. So the defendant believed that that very substantial downward departure included all of the 3553A factors that he believed the Court should consider. And third, the Court actually did consider the 3553A factors in quite detail, a large amount of detail, in the record, pages 30 through 39 of the sentencing transcript, where the Court discusses every single one of the 3553A factors that the defendant raised, as well as some others that the Court raised on its own. So this is not a slapdash sentencing by any means. And this is not one of those sentencings where the Court says, well, I don't care what the guidelines range really is, because I'd always give the same sentence regardless. This is a case where the Court looked at all the 3553A factors in detail and then decided on the very offense level that the defense requested. Well, I don't think there's any question about your third point, but as to your first two, aren't we just going to be up here on a 2255 on ineffective assistance of counsel? I mean, that's a — how do we know what the district court would have done had the district court started with the right guideline? That's always the question that we have. Well, I think there's an indication when the district court makes as large a departure that this one did, as this one did, and in doing so, sets out in detail why the court is making that departure, that the court has considered all of the 3553A factors. The defense counsel in this case did not exactly go into sentencing with a blank slate. The defense counsel listed a number of 3553A factors that he wanted the court to consider, the defendant's background, the fact that he was a collector, the fact that he thought his previous counsel was ineffective. So he raised all of those issues. The defense counsel wasn't ineffective at the sentencing level. And the court discussed all of them, considered all of them, and arrived at a very large departure to the range requested, but just not exactly the sentence the defendant wanted. What about the question Judge Sessions raised about Yip and Amos? Are these — is this relevant conduct? It is, Your Honor. And to start with the first guideline, before I deal with the relevant conduct guideline, 2K2.1, the application note number 5 to that guideline says, in counting the number of firearms, count all firearms illegally possessed. So then, going back to the relevant conduct guideline, it's clear that the question is, what firearms were illegally possessed? It's part of the same course of conduct. It's part of the same common scheme or plan. And the application notes to that guideline talk about what it means to be part of the same course of conduct. Application note 9 specifically, 9B, talks about course of conduct and says, what is the degree of similarity of the offenses, the regularity of the offenses, and the time interval between the offenses? Now, my only disagreement with what Judge Sessions had said before was that he said the other firearms were innocently owned. I would disagree with that because they were not innocently owned. All of the firearms were not owned. He was a prohibited person under State law with respect to all of the firearms because he was in violation of a protective order. But what is the offense for which he was convicted? Because that is the base upon which you then assess common scheme or plan, isn't it? It is. It is. So the offense is possession of a machine gun, essentially. It is. How does the possession of all of these other guns relate to that common scheme and plan that is possession of that machine gun? Well, he possessed another dozen. He actually possessed two machine guns, so we would be starting from two. In addition to that, he possessed 12 other assault rifles that were illegal under California law because they weren't registered. So assault rifles are not the same as machine guns, but it's similar enough in the sense that he's possessing the military-type rifle that he's not allowed to possess. And in the grander scheme, he's possessing all of them in violation of a protective order. So the conduct... Federal offense. Not a federal offense, but all of the offenses show a willingness to possess arms regardless of the laws regarding those arms. The other arms were possessed lawfully until the restraining order? Well, 12 of them, the assault rifles, under California law, were not possessed lawfully, period, because they weren't registered. Then there were the two machine guns that weren't possessed lawfully, period. And then finally... So the possession under California law was always unlawful? With respect to the assault rifles. With respect to 12 of the firearms, Your Honor, correct. There were another about 14 firearms that he possessed legally until he was in violation of the protective order. In my last minute or so, I'd like to discuss very briefly the fine. There is a record for imposition of this fine. The district court asked the probation officer at sentencing to discuss the financial information that she had received, I'm sorry, that he had received from the defendant. He said he had not received any information. He had done his own investigation and found that there was financial ability to pay a fine. The defendant made kind of a last minute submission of his own, but the court wasn't required to believe that. He had, he could at that point have doubted the defendant's credibility, perhaps based on the equivocation about whether he had been served with a search warrant, I mean, with a protective order. He could reach his own conclusion, which he did when he found that there was financial ability to pay a fine. And just to ask, answer the court's earlier question, it was Judge Davila in San Jose who was a sitting district judge who presided over this case, who's still sitting there. In sum, there was probable cause to issue the search warrant. And while there was error at sentencing, there was no effect on the defendant's substantial rights. I'd ask this Court to affirm. Thank you. Thank you, counsel. Thirty-four seconds, was that it? We'll give you 60. There was a harm to Mr. Varghese's substantial rights in this case, because he was sentenced in a manner that indicates that there was legal error that could have increased the length of his sentence, as Tapia and Joseph instruct. We know that the guidelines were important here, Justice Thomas, because the court had difficulty in coming to a sentence, an ultimate sentence, and so that the court continually looked towards those sentencing guidelines to figure out what the ultimate sentence would be. And California law is critical to whether or not we determine. We looked at California law, and it's critical in this case because it's how we determine whether or not probable cause has been established. Ultimately, the relinquishment of the weapons was also included as an argument as to Ahmaud. We briefed that on page 51 and 52 as to relevant conduct in this case, and the weapons that were found were not relevant. And finally, as to whether or not the form said relinquished or California law says relinquished, the actual California law does not say relinquished. It says that the form should say that the weapons should be relinquished, but the law itself does not say relinquished. Thank you, counsel. Thank you both very much. The case is arguably submitted.
judges: Sessions, Reinhardt, Thomas